IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LINDEN JUHALA,                                    Case No. 3:10-cv-752-MA

              Plaintiff,                        OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

              Defendant.

DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center, Suite 130
Portland, OR 97223

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID J. BURDETT
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Linden Juhala brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse and remand for an award of benefits.

### PROCEDURAL BACKGROUND

This case has a lengthy procedural background. Plaintiff filed an application for disability insurance benefits on June 7, 1994. Plaintiff alleged disability beginning on August 1, 1987. Plaintiff's disability insured status expired after June 30, 1992, his date last insured (DLI).

Plaintiff previously filed an application for benefits on February 20, 1979, and was found disabled as of May 18, 1978. The Commissioner later found that plaintiff's disability ceased in December 1982 in a decision that became final on March 29, 1989. The March 29, 1989 decision also incorporated a March 5, 1987 application for benefits. Because the March 29, 1989 decision determined that plaintiff was not disabled through the date of the decision, the earliest possible date plaintiff could be determined disabled is March 30, 1989. Accordingly, for purposes of this court's consideration, the relevant time frame is March 30, 1989 to June 30, 1992.

2 - OPINION AND ORDER

Plaintiff's disability application was denied initially, and upon reconsideration. Following a hearing before an ALJ on December 18, 1996, plaintiff received an unfavorable decision. The Appeals Council denied review. Plaintiff then sought judicial review. On March 1, 1999, the ALJ's 1996 decision was reversed and remanded for further proceedings.

The ALJ conducted a supplemental hearing on January 12, 2000. On March 3, 2000, the ALJ issued another unfavorable decision. Following denial of review from the Appeals Council, plaintiff again sought judicial review. This court affirmed the ALJ's decision on April 25, 2005. Plaintiff appealed. In a July 23, 2007 decision, the Ninth Circuit Court of Appeals reversed and remanded the case for consideration of a February 2000 retrospective functional assessment by Ronald D. Grewenow, M.D., and reevaluation of plaintiff's claim.

After a few postponements, the ALJ conducted another supplemental hearing on April 1, 2010. Plaintiff was represented by counsel and testified briefly at the hearing. Also appearing and testifying at the hearing were David R. Rullman, M.D., an impartial medical expert, and Gary R. Jesky, an impartial vocational expert. On April 26, 2010, the ALJ issued an unfavorable decision.

////

////

## FACTUAL BACKGROUND

Plaintiff was born in March 1949 and was 43 on the date his insured status expired.  Plaintiff has completed a GED and received technical training in welding.  Plaintiff has past relevant work as a welder and boilermaker.  Plaintiff later earned 180 college credits.  In 1978, plaintiff's right knee was fused, and in 1981, plaintiff suffered a slipped disc in his back while working in a shipyard.  In 1993, plaintiff was given a 40 percent disability rating by the Veterans' Administration (VA) for "acute low back strain and degenerative disc disease at L4-5" and a total disability evaluation by reason of individual unemployability due to a service-connected disability.  In his 1994 application for benefits, plaintiff alleges disability due to degenerative disc disease and a right knee fusion.  (Tr. 404.)

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform.  Yuckert, 482 U.S. at 141-42.

In the April 26, 2010 decision, the ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 1992, plaintiff's DLI.  A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); 20 C.F.R. § 404.131; Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity between March 30, 1989 through the date last insured on June 30, 1992.  See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured:  degenerative joint disease of the knees with post surgical residuals, degenerative disc disease, deep venous thrombosis, and obesity. See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed plaintiff with a residual functional capacity (RFC), through his date last insured, to perform light work as defined in 20 C.F.R. § 404.1567(b), except he is limited to slow, deliberate walking on even surfaces, cannot work at heights, cannot climb ladders or scaffolds, cannot perform repetitive or prolonged twisting or bending or stooping to the floor, and cannot crawl or

5 - OPINION AND ORDER

kneel.    The ALJ also found plaintiff is limited to simple, unskilled work.  <u>See</u> 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found that plaintiff could not perform his past relevant work (PRW).  <u>See</u> 20 C.F.R. § 404.1565.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that plaintiff can perform.  <u>See</u> 20 C.F.R. §§ 404.1560(c), 404.1566.  Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ made the following errors: (1) improperly found that plaintiff's impairments did not meet or equal Listing 1.02; (2) improperly discredited plaintiff's testimony; (3) improperly assessed a functional capacity statement of Dr. Grewenow; (4) improperly discredited the VA disability rating; (5) improperly discounted the lay witness testimony of Wesley Bachelor, Quina Juhala, and Rita Doyle; (6) improperly evaluated his residual functional capacity; and (7) ignored evidence concerning data about the numbers of jobs at the national and regional levels.  Plaintiff asserts that when the improperly rejected evidence is credited as true, he has established disability, and the case should be remanded for immediate payment of benefits.

////

6 - OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039; <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Id.</u>; <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Andrews</u>, 53 F.3d at 1039-40. A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. <u>Benton ex rel. Benton v. Barnhart</u>, 331 F.3d 1030, 1035 (9th Cir. 2003).

**I.   Listing 1.02.**

The Social Security Regulations' "Listing of Impairments" generally describes impairments that are so severe as to be considered presumptively disabling, without further consideration

of a claimant's residual functional capacity, past relevant work, or other jobs. 20 C.F.R. §§ 404.1520(d), 416.920(d). A diagnosis of a listed impairment is not sufficient; the claimant must satisfy the all of the specified medical criteria for that listing. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). A claimant has the burden to establish that he or she meets or equals the criteria for a listed impairment based on medical evidence. 20 C.F.R. § 404.1520(a)(4)iii; Burch, 400 F.3d at 683; Tackett, 180 F.3d at 1100.

In this case, plaintiff asserts that the ALJ erred by failing to find that he meets or equals Listing 1.02. Listing 1.02 provides in relevant part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
>
> With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b[.] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

"Effective ambulation" is defined as "an extreme limitation of the ability to walk" and "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-

held assistive device[.]" <u>Id.</u> at § 1.00B2b.  The definition

provides examples of ineffective ambulation:

> the inability to walk without the use of a walker, two
> crutches or two canes, the inability to walk a block at
> a reasonable pace on rough or uneven surfaces, the
> inability to use standard public transportation, the
> inability to carry out routine ambulatory activities,
> such as shopping or banking, and the inability to climb
> a few steps at a reasonable pace with the use of a single
> hand rail.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §
> 1.00B2b.

Plaintiff argues that the testimony of Dr. Rullman combined

with the ALJ's own conclusion that plaintiff was limited to slow,

deliberate walking on even surfaces in the RFC establishes that he

met Listing 1.02.   I disagree.

Reviewing the April 2010 hearing testimony reveals the

following exchange between the ALJ and Dr. Rullman:

> [ALJ]:  Okay.  Was there, in your opinion, at that time
> [prior to June 30, 1992], based on the evidence that
> you've reviewed, a meeting or equaling of that particular
> listing, 1.02?
>
> [Dr. Rullman]:  Very difficult to answer.  It's like
> being under the water in a very deep lake and being asked
> if you want a drink.  I would - I think it's quite
> possible that he met the listing.  On the other hand, his
> recent injury a year ago, he was walking on stairs and
> must have been ambulatory, so I don't have any real
> description of -
>
> Q.  Okay.  If -
>
> A.  -his functional capacity.  (Tr. 1064-65.)

Based on this exchange and an examination of Dr. Rullman's

hearing testimony in full, Dr. Rullman's testimony is less certain

than plaintiff suggests, and I conclude, as did the ALJ, that Dr. Rullman did not state specifically that plaintiff meets Listing 1.02.  To be sure, Dr. Rullman highlighted the lack of concrete evidence demonstrating plaintiff's functioning prior to 1992, and indicated to the ALJ that to meet Listing 1.02, plaintiff must be unable to ambulate effectively, as defined in the regulations. (Tr. 1065.)

In this case, the ALJ concluded that plaintiff did not meet or equal Listing 1.02 because plaintiff had not demonstrated that he could not effectively ambulate.  Specifically, the ALJ found the following:

> [Plaintiff] had knee problems with surgical repair resulting in limited movement but he appeared to have remained ambulatory.  Dr. Rullman noted that while it is possible his knee impairment could have met the criteria of section 1.02 of the listings, evidence does not establish an inability to ambulate effectively. . . . Treatment records reflect the claimant has played tennis, done remodeling work, gone fishing, and done yard work. These activities are not consistent with an inability to ambulate effectively as defined in section 1.00 of the listings.  (Tr. 1048.)

Plaintiff complains that the activities cited by the ALJ – playing tennis, remodeling, fishing and yard work – all occurred after his date last insured and should not be considered when evaluating whether he met Listing 1.02 prior to 1992.

I conclude that even if the ALJ erred by considering that evidence at step three, any such error is harmless.  Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

2006).  Plaintiff has not demonstrated that he satisfies all of the medical criteria to establish that he meets or equals Listing 1.02. Young, 911 F.2d at 184.

To be sure, plaintiff points to no other evidence in the record demonstrating his inability to ambulate effectively after 1989 and prior to 1992.  The record is devoid of any evidence showing that plaintiff used a cane prior to 1996.  (Tr. 1049.) And, there is no evidence that plaintiff used any other devices or companion assistance to aid his ambulation after 1989 and prior to 1992 as described in the regulations.  (Tr. 750.)

Additionally, I conclude that the ALJ's finding that plaintiff was limited to walking on smooth surfaces in the RFC is not equivalent to the complete inability to walk one block on an unsmooth surface, necessary for meeting or equaling Listing 1.02. See Soutar v. Astrue, 2009 WL 453074, *2 (C.D. Cal. Feb. 23, 2009)(state agency physician's opinion that plaintiff should avoid walking on uneven surfaces does not equate to finding "inability to walk a block at a reasonable pace on rough or uneven surfaces" in Listing 1.02, 1.00).  Also, the lay testimony given at the 1996 and 2000 hearings indicate that in 1992 plaintiff could walk two blocks before becoming tired.

In short, I conclude that the Dr. Rullman did not opine that plaintiff met Listing 1.02.  And, I conclude that even if the ALJ erred in relying exclusively on activities performed following

plaintiff's date last insured to conclude that plaintiff did not meet or equal Listing 1.02, any such error is harmless.  Plaintiff has not demonstrated that he met or equaled Listing 1.02 prior to his date last insured.

## II.  The ALJ Did Not Provide Clear and Convincing Reasons to Discount Plaintiff's Testimony.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  Carmickle v. Commissioner Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  Factors the ALJ may consider

when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039; Bunnell, 947 F.2d at 345-46. In this case, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his credibility.  I agree.

In reviewing plaintiff's voluminous medical records and procedural record, I note that no ALJ or treatment provider has found malingering, or expressed that plaintiff has exaggerated his symptoms.  In the 2010 decision, the ALJ discredited plaintiff's testimony of debilitating pain because the record showed little evidence of treatment for pain.  Here, the ALJ discussed that during the 1996 hearing, plaintiff described that he experienced severe pain at least 50 percent of the time in 1992.  The ALJ cited plaintiff's hospital records from his 11 day hospitalization for deep venous thrombosis in August 1989, and implies that at discharge plaintiff was not complaining of pain and was limited to moderate activity.  (Tr. 508-09.)  However, the hospital records

13 - OPINION AND ORDER

show that plaintiff did report that he suffered chronic low back pain, and that during his stay, he had one episode of pain with moderate activity, and that the pain resolved with rest. (Tr. 509.) Plaintiff remains on Coumadin for this condition.

The ALJ also discussed a record dated May 1990 where plaintiff sought treatment for low back pain, but the examination was negative. The ALJ noted that plaintiff began physical therapy for his low back pain in August 1990, but the record suggests that plaintiff did not regularly attend therapy sessions at that time.

The ALJ noted that plaintiff sought treatment from Dr. Grewenow for his back in November 1990, and was prescribed Tylenol #3 and Salsalate. The record cited by the ALJ indicates that plaintiff wanted to return to physical therapy at that time. (Tr. 501.) The ALJ discussed that in July 1991, plaintiff reported that he was "doing O.K.," and getting more exercise which was increasing his pain. (Tr. 499.)

The ALJ also discussed a September 1991 consultative examination of plaintiff completed by Thomas W. Shinder, M.D. The ALJ noted that Dr. Shinder's examination found that plaintiff had full motor strength and sensation in all four extremities, and was able to heel to toe walk, but unable to tandem walk due to his right knee fusion. (Tr. 476.) The ALJ noted that Dr. Shinder found plaintiff was able to forward bend 50 degrees, unable to backward bend, and that his left leg raise was positive at 70

degrees.  The ALJ noted that Dr. Shinder found no muscle spasms and no tenderness.  As the ALJ reported, Dr. Shinder found "no evidence on neurologic examination for radiculopathy or any other neurologic deficit."   Additionally,  as  the  ALJ  described,  Dr.  Shinder concluded that plaintiff's back pain was due to musculoskeletal strain.  (Tr. 476.)

Continuing the review of plaintiff's medical records, the ALJ noted that a lumbar spine x-ray in September 1991 showed severe degenerative changes in the lower lumbar spine at L4-5.  (Tr. 477.) However, the ALJ failed to discuss how the evidence of severe degenerative changes conflicted with Dr. Shinder's conclusion that plaintiff suffered a musculoskeletal strain.  Additionally, the ALJ failed to offer his own interpretation of that evidence.

Likewise, the ALJ failed to offer his interpretation of a January 1992 MRI ordered by Dr. Shinder to rule out nerve root entrapment.  While the ALJ noted that the MRI showed degenerative disk disease at L4-5, and a mild disc protrusion at L5-S1, the ALJ failed to discuss that the MRI also showed abnormal signal intensity at the L4 level, and that there was "marked disc space narrowing" at the L4-5 level.

Contrary to the ALJ's conclusion, I find that plaintiff consistently complained of low back pain to his providers during the relevant time frame, and imaging revealed severe degenerative changes.  And, despite the ALJ's inference that plaintiff sought

15 - OPINION AND ORDER

only conservative treatment, the record clearly shows that plaintiff took prescription pain medication (Tylenol #3) for his back pain during the relevant time frame and began taking Oxycodone by sometime in 1993. (Tr. 454.)

Accordingly, I find that the ALJ's conclusion that plaintiff did not complain of back pain during the relevant time period is not supported by substantial evidence. See Lingenfelter, 504 F.3d at 1040 n.11 ("[A]n ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain . . . is not supported by objective medical evidence.")

The only other reason identified by the ALJ for discrediting the plaintiff was his apparent active lifestyle. According to the ALJ, plaintiff's complaints of debilitating pain were inconsistent with his ability to play tennis, go fishing, remodel his house, do yardwork, and vacation in the Philippines.

In the April 2010 decision, the ALJ cites assorted medical records, including one dated September 3, 1993, in which plaintiff sought medical care for an injury to his left knee. In that record, the doctor describes plaintiff's chief complaint as follows: "[h]e was playing tennis approximately six months ago and while moving laterally to his left, he hyperflexed his left knee." (Tr. 493.) As the ALJ indicated, the record shows that plaintiff went on vacation in the Philippines in August to September of 1996. (Tr. 572.) The ALJ also relied on a medical record showing that on

July 24, 1995, plaintiff injured his back when doing yard work. (Tr. 622.)  And, the ALJ cited a record dated April 1995, in which plaintiff reported that he was living in a new house, and is "cleaning it up & trying to remodel."  To be sure, in the April 1995 record, plaintiff reported that he was "more active –fishing, trying to remodel, takes wife to school, play[s] with kids." (Tr. 633.)  And, in September 1994, plaintiff reported that he was feeling better and was fishing and playing tennis.  (Tr. 659.)

As plaintiff accurately notes, there is little, if any, evidence in the record concerning how often plaintiff performed these activities.  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)(daily activities must be substantial and transferable to a work setting to be support an adverse credibility determination). In this case, the ALJ failed to make a specific finding that any of these activities were carried out on a daily basis, or whether any of these tasks amounted to sustained daily physical activity.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)("if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain" (emphasis in original)).  Thus, it is possible that a claimant may periodically travel, cook meals, and wash dishes and still be prevented from working.  See Burkard v. Astrue, 2010 WL

5789044, *15 (D. Or. Dec. 7, 2010), adopted, 2011 WL 2199462 (D. Or. June 6, 2011); accord Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(a claimant does not need to be "utterly incapacitated" to be disabled).

Furthermore, the evidence in the record concerning plaintiff's trip to the Philippines was equivocal at best.  Plaintiff described that he would have preferred using a wheelchair to get around the airport, that the trip was terrible, and that it was quite difficult for him to get around.  (Tr. 56.)

In sum, I find that the ALJ failed to provide clear and convincing reasons to discount plaintiff's testimony.

**III. The ALJ Did Not Provide Germane Reasons to Reject the Lay Witness Testimony.**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Stout, 454 F.3d at 1053; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so.  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Valentine, 574 F.3d at 694.

Rita Doyle, plaintiff's sister, testified at the 1996 hearing that plaintiff had difficulty walking, could walk two blocks before becoming tired, and seemed in pain all the time.  At the 2000

hearing, Ms. Doyle testified that plaintiff did not do yard work in 1992, and was easily tired by lifting objects, or fixing a meal. Mr. Bachelor, plaintiff's friend, testified at the 1996 hearing that plaintiff tired easily, was unable to fish and hunt, and that plaintiff could walk two or three blocks before becoming tired, and had a severe limp.  Quina Juhala testified at the 1996 hearing that plaintiff was able to walk two blocks before he became tired, that plaintiff dropped things like plates and glasses, that he easily tired, and became irritable when he ran out of pain medication.

The ALJ improperly rejected the testimony of Ms. Doyle and Mr. Bachelor.  The ALJ found the testimony of these two witnesses not credible because it was inconsistent with plaintiff's daily activities.  As discussed above, the ALJ erred in discounting plaintiff's testimony on this basis; thus, the ALJ could not use the same rationale to discount the lay witness testimony.

Although ALJ discounted Ms. Juhala's testimony because it was inconsistent with plaintiff's alleged active lifestyle, the ALJ also supplied another reason – that her testimony was inconsistent with plaintiff's medical record concerning plaintiff's grip strength.  That finding is supported by substantial evidence in the record, and thus, is a germane reason for discounting her testimony.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>Valentine</u>, 574 F.3d at 694.

In short, the ALJ erred in rejecting the lay testimony of Ms. Doyle and Mr. Bachelor.  However, the ALJ did not err with respect to Ms. Juhala.

## IV.  The ALJ's RFC Assessment and Step Five Determination.

A claimant's RFC describes the work-related activities a claimant can do, despite the functional limitations imposed by his impairments.  20 C.F.R. § 404.1545(a); Social Security Ruling (SSR) 96-8, 1996 WL 37184.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which his medically determinable impairment(s), including any related symptoms may cause physical or mental limitations or restrictions that may affect a claimant's capacity to do work.  SSR 96-8.

As discussed above, the ALJ failed to provide clear and convincing reasons for discrediting the plaintiff's testimony and erred in discounting the lay witnesses Ms. Doyle and Mr. Bachelor, and the VA's opinion.  As such, those symptoms were erroneously excluded from the plaintiff's RFC.  Lingenfelter, 504 F.3d at 1040.  Accordingly, the RFC is not supported by substantial evidence.  It follows that substantial evidence does not support the ALJ's step five determination, since the hypothetical posed to the VE was based on the erroneous RFC.  Robbins v. Social Sec. Admin., 466

F.3d 880, 886 (9th Cir. 2006); <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163 (9th Cir. 2001).

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." <u>Id.</u> The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. <u>Id.</u>

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).

At the April 1, 2010 hearing, plaintiff's attorney posed a lengthy hypothetical to the VE which included limitations described by plaintiff and lay witnesses Doyle and Bachelor. The VE

testified that if a person worked at two-thirds pace of a normal person some of the time, and at half pace for half of the time, had symptoms that interfere with attention and concentration, could walk for up to three blocks on a level surface; and if the person's maximum ability to stand and walk is two hours, the ability to sit is four hours during a normal workday, and that the person must be able to change from standing to sitting at will, that the person would be unable to sustain competitive employment. (Tr. 1276-77.)

When plaintiff's testimony and the lay testimony is fully credited, it is clear that plaintiff is disabled within the meaning of the Act. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). At the 1996 hearing, plaintiff testified that in 1992, he felt pain every day in his lower back, radiating down the backs of both legs. (Tr. 54.) On a scale of zero to ten, plaintiff testified that his pain was at an eight, nine or ten at least 50 percent of the time during 1992, and that his back would go out one to four times a year. (Tr. 36.) Plaintiff testified that he can stand for twenty minutes before needing to rest, and at most could be on his feet for two hours or sit for two hours in an eight hour day. (Tr. 50.) Plaintiff testified that he works at a much slower pace than the average person.

At the 1996 hearing, Mr. Bachelor testified that in 1992, the farthest plaintiff could walk before needing to rest was three blocks, and that plaintiff has a pronounced limp and appeared to be

in pain most of the time. (Tr. 59.)  Mr. Bachelor testified that on a good day, plaintiff's pace was about 50 percent, and that on the remaining days, plaintiff's pace was less than two thirds of an average person.  (Tr. 60.)

Ms. Doyle testified at the 1996 hearing that in 1992, plaintiff appeared to be in pain all the time, and slept on the floor when his back was out.  (Tr. 66.)  Ms. Doyle testified that plaintiff's pace to complete tasks was less than 50 percent of a normal person and that plaintiff could walk only two blocks before needing to rest.  (Tr. 66-67.)  At the 2000 hearing, Ms. Doyle testified that in 1991 to 1992, she saw plaintiff once or twice a week, and that plaintiff mostly sat in the recliner.  (Tr. 756.)

In short, when the improperly omitted evidence is credited as true, there is ample testimony which demonstrates that plaintiff is unable to sustain competitive employment.  Because there are no outstanding issues that must be resolved and it is clear from the record that plaintiff is entitled to disability benefits, I reverse the ALJ's decision and remand for an award of benefits.  Benecke, 379 F.3d at 596.

Because I have remanded for an immediate award of benefits, I do not address plaintiff's remaining issues.

////

////

////

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for an immediate calculation and award of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this _3rd___ day of JANUARY, 2012.

/s/Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge